STATE BOARD OF TAX APPEALS.

CITY OF NEWARK, PETITIONER, v. UNIVERSAL INSUR-
ANCE COMPANY, RESPONDENT.

CITY OF NEWARK, PETITIONER, v. UNIVERSAL INDEM-
NITY INSURANCE COMPANY, RESPONDENT.

Decided July 23, 1940.

For the petitioner, *James F. X. O'Brien* (by *Raymond Schroeder*).

For the respondents, *Child, Riker, Marsh & Shipman* (by *Jehiel G. Shipman*).

QUINN, President. Each of the respondents is a stock insurance company, subject to assessment for the tax years 1937 and 1938, upon capital stock and accumulated surplus, under *Pamph. L.* 1918, *ch.* 236, § 307 (*R. S.* 54:4-22; *N. J. S. A.* 54:4-22), "in the taxing district where its office is sit-

uate." Assessments were levied by the city of Newark against Universal Insurance Company, in the sum of $575,000 for each of the years 1937 and 1938, and against Universal Indemnity Insurance Company in the amount of $320,300, for said years. Upon appeal to the Essex County Board of Taxation, each assessment was canceled. The single issue involved is as to whether either of the companies had "its office" in the petitioner taxing district upon the assessing dates for the tax years in question, being October 1st, 1936, and October 1st, 1937.

The proof adduced at the hearing by the respondents establishes the fact that the only offices maintained by them in the state upon either of the dates referred to were the statutory registered offices required to be established by the companies as domestic corporations, these being located in the city of Jersey City. Taxes were assessed against and paid by the companies in that taxing district for the years in question. The actual headquarters of the companies and their chief executive and managerial offices are and always have been in New York City.

The petitioner taxing district bases its appeal, however, upon the thesis that respondents did maintain offices in Newark prior to October 1st, 1936, but in August of 1936 adopted a fictional device for the purpose of avoiding further taxation by that municipality, by transferring the operations of their offices theretofore existing in Newark, to their closely affiliated general agency, Talbot, Bird and Company, which allegedly carried on the identical operations of the respondents in Newark, in the same offices, and using the same personnel as theretofore employed by them.

The facts established by the proof in this connection are these. Prior to August, 1936, the Universal companies maintained a service office at 1180 Raymond Boulevard, for purposes of assisting agents and brokers who wrote insurance for the companies throughout the state. The bulk of the work of the companies was done at their chief offices in New York City, to which agents remitted premiums and applications for insurance. The statutory registered offices were with a firm of lawyers in Newark. In August, 1936, the registered

offices were removed to Jersey City, the service office in Newark was discontinued, and the office space and personnel taken over by Talbot, Bird and Company. The latter company is a New York corporation engaged in the business of general insurance brokerage, organized many years prior to the formation of the respondent companies, and now acting as brokers for many insurance companies throughout the country, although a substantial proportion of its business consists of insurance written for the respondent companies. It is duly authorized to transact business in New Jersey, and it paid personal property taxes to the city of Newark in 1937 and 1938. It is clear to us from the proof adduced that Talbot, Bird and Company is an entity distinct and separate from the respondent corporations, and that it is doing a general insurance brokerage business in Newark that cannot be identified with the proper functions and operations of respondents in any sense other than with those of other insurance companies represented by it. If it were material, therefore, we do not believe it could fairly be stated that Talbot, Bird and Company is a fictional entity devised by respondents to avoid taxes properly chargeable to them in Newark.

But we do not regard the motivation for the changes in office arrangements made by respondents in August, 1936, as material. The removal of the office of a corporation from one taxing district to another, where complete, in good faith and without reservation, is effective to change the taxable *situs* of the intangible personalty of the corporation, even where the purposes of such removal is the avoidance of taxation in the first taxing district. *City of Newark* v. *New Jersey Investment Co.* (*State Board,* 1940), 18 *N. J. Mis. R.* 182; 11 *Atl. Rep.* (*2d*) 730; and see *Hoboken* v. *State Board of Taxes and Assessments* (*Supreme Court,* 1930), 107 *N. J. L.* 35; 151 *Atl. Rep.* 364; *affirmed* (*Court of Errors and Appeals,* 1931), 108 *N. J. L.* 195; 156 *Atl. Rep.* 377; *Hoboken* v. *The Hoboken Dock Co.* (*State Board*), filed September 12th, 1939.

It is unnecessary to consider whether the reference to "office," in section 307, is construable as meaning "chief office," as specifically provided for the determination of the taxable *situs* of corporate intangibles in the case of ordinary

corporations, in section 305 of the 1918 Tax act (*R. S.* 54:4-19), since, in our view, there is no room for dispute of the proposition that respondents maintained no office whatever in the city of Newark upon the assessing dates for either of the years in question. *City of Newark* v. *Excess Insurance Co. (State Board,* 1940), 18 *N. J. Mis. R.* 181; 11 *Atl. Rep.* (*2d*) 741.

The judgments of the Essex County Board are affirmed.